OPINION OF THE COURT
David B. Saxe, J.
In this small claims case, I am asked to resolve the question of whether a stock transfer assessment (popularly termed a “flip” tax) imposed by the board of directors of a co-operative corporation on all tenant-shareholders when they transfer their shares of stock to a third party is valid.
The essential facts are as follows: The plaintiff, Albert L. Berglund (Berglund), moved into the premises known as 411 East 57th Street, New York, New York, on September 1, 1971, occupying apartment No. 8E. In 1972, a co-operative conversion plan for the building owned by defendant 411 East 57th Corporation (the Corporation), was accepted for filing by the Attorney-General and approved by the prospective tenant-shareholders. Berglund purchased the shares of stock allocable to apartment No. 8E and entered into a proprietary lease (the Lease) with the Corporation.
On June 21, 1982, the board of directors, by corporate resolution, passed a stock transfer fee or assessment (the Assessment). In short, upon the transfer of shares by a tenant-shareholder to a third party a charge is imposed upon the seller in the amount of 1% of the sales price.
On August 11, 1983, Berglund sold his apartment and assigned his 385 shares to a third party for $160,000, which assignment became subject under this resolution to a stock transfer assessment of $1,600.
*703 Berglund has now instituted this action seeking to recover the sum of $1,500 (apparently in order to remain within this court’s jurisdiction of $1,500), on the basis that the board acted beyond its powers in authorizing the Assessment by corporate resolution.
It has been established that the grant of powers to a board of directors of a co-operative corporation to adopt resolutions is derived in part from the proprietary lease each shareholder enters into with the co-operative, the articles of incorporation and by-laws. ('Vernon Manor Coop. Apts, v Salatino, 15 Misc 2d 491; Garrison Apts, v Sabourin, 113 Misc 2d 674; see Cabana v Holstein-Friesian Assn., 196 App Div 842, affd 233 NY 644.)
The grant of powers to the board here is extremely broad. Section 1 of article II of the by-laws provides: “The affairs and business of this corporation shall be managed by its Board of Directors * * * The Directors * * * may adopt such rules and regulations for the conduct of their meetings, the execution of their resolutions and the management of the affairs of the corporation as they may deem proper, not inconsistent with the laws of the State of New York, the certificate of incorporation or these By-Laws.”
Paragraph fourth of article A of the Lease provides:
“The Board of Directors of the Lessor shall have discretionary power to prescribe the manner of maintaining and operating the building, and to determine the cash requirements of the Lessor to be paid as aforesaid by the Lessees under proprietary leases. Every determination by the Board of Directors, made pursuant to this lease, shall be final and conclusive as to all Lessees. Any expenditures made by the Lessor’s officers or managing agent, under the direction or with the approval of the Lessor’s Board of Directors, pursuant to this lease, shall as against the Lessee, be deemed necessarily and properly made for such purposes.
“The power and authority to determine and establish the amount of and to require payment of the rent above provided for shall be possessed only by the Board of Directors of the Lessor”.
*704 The Cooperative Corporations Law and the Business Corporation Law[1] further demonstrate that the resolution passing the Assessment was an appropriate action of the board in the exercise of its inherent power and business judgment to manage and operate the co-operative.
Pursuant to section 701 of the Business Corporation Law, the business of a corporation “shall be managed by its board of directors”. Furthermore, section 202 (subd [a], par [16]) of the Business Corporation Law states that a corporation
“shall have the power in furtherance of its corporate purposes * * *
“to have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is formed.”
The powers of a co-operative are similarly delineated in section 14 of the Cooperative Corporations Law. Subdivision (q) of section 14 provides that a co-operative corporation has the power “to possess and exercise all powers, rights and privileges * * * necessary, suitable or incidental to the purposes or activities for which the corporation is organized or in which it is engaged.” Moreover, the purposes of a housing co-operative are listed in subdivisions (c) and (d) of section 3 of the Cooperative Corporations Law which states in pertinent part that co-operatives formed pursuant to the Cooperative Corporations Law are done so “for the cooperative rendering of mutual help and service to its members” and that such a co-operative corporation is “classed as a non-profit corporation, since its primary object is not to make profits for itself as such, or to pay dividends on invested capital, but to provide services and means whereby its members may have the economic advantage of cooperative action, including a reasonable and fair return for their product and service.”
The courts have observed this relationship between the powers of the board of directors and the professed function and purpose of a co-operative. (Hanson v Ontario Milk Producers Coop., 58 Misc 2d 138; Vernon Manor Co-op. Apts. v Salatino, 15 Misv 2d, at p 495.) In Vernon Manor, *705 the court pointed out (p 495): “The relation between the [co-operative and the board] and its members is fiduciary in nature * * * and the board of directors were bound, on one hand, to manage the affairs of the [co-operative] so as to carry out its purposes to house its members in a comfortable and efficient manner, and on the other hand, to treat its individual members in a fair and equal way. The [individual shareholders], too, had the correlative duty to recognize that the co-operative enterprise must be conducted with the objective of securing the greatest good for the benefit of the membership.”
Therefore, it is clear that the board here had the broad powers and discretion to pass the corporate resolution authorizing the Assessment. This power is consistent with “the ‘purpose clause’ of the certificate of incorporation and [is] in the best interests of the corporation” (Goldstone v Constable, 84 AD2d 519, 520, citing Schwartz v Marien, 37 NY2d 487,492). Moreover, since the management of corporations is entrusted to their officers and directors, the business judgment exercised by them is not reviewable by the courts, even if they do not agree with the soundness thereof, absent bad faith or self-dealing. (Smith v Bailie, 44 NYS2d 217, 220, affd 266 App Div 950; Hanson v Ontario Milk Producers Coop., 58 Misc 2d, at pp 140-141; Garrison Apts. v Sabourin, supra.)
The board passed the Assessment as a reasonable and prudent measure to benefit each tenant-shareholder by defraying increased operating costs and thereby keeping monthly maintenance charges at a reasonable level. The board, therefore, acted with “a bona fide belief that the burdens of compliance with [the] restriction were proportionate to those benefits within the purposes of the [cooperative].” (Note, 94 Harv L Rev 647, 666.)
Indeed, a tenant-shareholder, such as Berglund, does receive the benefits of any stock transfer fee imposed while he is a shareholder. For example, he may reap the benefits of a lower monthly maintenance, fewer assessments and a higher quality building, since the board is able to make capital improvements with such funds. In fact, as a result of this benefit, and the ability of the co-op’s board of directors to keep the maintenance low, Berglund was pre *706 sumably able to sell his apartment at a higher price than he otherwise might have. His profit was $140,000, a 700% return!
More to the point, however, is the fact that courts have held that co-operatives have the right to control the occupancy and sale of their apartments, including, what appears to be the authority to impose stock transfer fees. (Jamil v Southridge Coop., 102 Misc 2d 404 [App Term, 2d Dept], affd 77 AD2d 822, cert den 450 US 919; Reifman v Berkeley Coop. Section III Corp., Civ Ct of City of NY, NY County, Jan. 31, 1975, No. 63890/74; Pomerantz v Clearview Gardens, NYLJ, Oct. 31, 1979, p 12, col 4, affd 77 AD2d 651.)
In Jamil (supra), which involved a waiver of an option to purchase fee, rather than strictly a transfer fee, a tenant-shareholder instituted an action to recover the $2,000 waiver of option fee imposed upon him before the defendant would permit him to transfer his shares and assign his lease. Although the proprietary lease provided for transfer privileges without mentioning any fee, the board had approved the transfer fee by corporate resolution. The Appellate Term, Second Department, found that the board resolution imposing the “ ‘waiver of option’ fee, was a valid exercise of the power of defendant’s board of directors”. (102 Misc 2d, at p 405.)
In Reifman (supra) the court upheld the corporation’s right to charge the co-operative tenant a transfer fee pursuant to a resolution of the board. Despite the fact that the by-laws were silent on the issue and any amendment to the by-laws required shareholder approval, the . court emphasized: “[T]he resolutions were merely income-producing measures adopted for the benefit of all shareholders, and a valid, good faith exercise of business judgment on the part of the board of directors, without any infringement upon the rights of shareholders (Hilltop Village Cooperative No. 4 v. Wolman, 178 NYS2d 498; Vernon Manor Co-op Apartments v. Salatino, [178 N.Y.S. 2d 895]). Consequently, an amendment requiring a vote of the shareholders was unnecessary.”
In Pomerantz v Clearview Gardens (supra), a tenant-shareholder sued a co-operative arguing that its resale *707 policy was an unreasonable and illegal restraint on the alienation of property and was also unconscionable. The by-laws provided that an outgoing shareholder had to offer to the corporation the option to purchase the shares at a price “ ‘equal to the face of said share plus accrued equity, less depreciation’ ” (NYLJ, Oct. 31,1979, p 12, col 4), which resulted in a negative figure in the plaintiff’s case. The board of directors devised an alternate resale policy so that a shareholder could sell his shares on the open market provided the sales price was not less than a predetermined minimum, which price would then be divided between the co-operative and the selling shareholder. According to the prescribed formula, plaintiff was required to pay to the cooperative 60% of the selling price.
The court dismissed plaintiff’s claims since she was not forced to sell her shares, but rather had the option of abiding by the by-laws or relying on the alternate resale policy. The court further noted that the resale policy had been adopted “In order to further the corporate welfare and to secure the [plaintiff’s] and all other shareholders’ investments”. (Pomerantz v Clearview Gardens, NYLJ, Oct. 31, 1979, p 12, col 5, supra.)
Accordingly, the claimant’s position with respect to the stock transfer assessment or “flip” tax is incorrect. Such an assessment is supported by both statutory law and case law.
Therefore, a judgment shall be entered in favor of the defendant,[2] but with no costs.

. The Business Corporation Law is made expressly applicable to co-operative corporations by section 14 of the Cooperative Corporations Law.

. The court compliments defendant’s counsel on the high quality of the memorandum of law submitted to it.