OPINION OF THE COURT
Felice K. Shea, J.
The question presented by these motions is the validity of a transfer fee imposed by the board of directors of a cooperative building on the sale of a residential apartment.
Defendants move for an order dismissing the complaint pursuant to CPLR 3211 (subd [a], par 1) upon the ground of a defense founded on documentary evidence; pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action; and, in the discretion of the court, for an order awarding summary judgment under CPLR 3211 (subd [c]). Plaintiff cross-moves for an order awarding summary judgment on his first and third causes of action or, in the alternative, on his second and third causes of action.
Plaintiff is a former proprietary lessee and shareholder of a residential cooperative corporation who seeks to recover a resale or transfer fee (flip tax) of $39,000 paid to the corporation when he sold his apartment. Defendants are *112 the cooperative corporation, its managing agent and five individual directors.
The complaint alleges that on October 5, 1983, plaintiff entered into a contract to sell his apartment that provided for the closing to be held on November 14, 1983. On November 1, 1983, the cooperative’s board of directors passed a resolution that sharply escalated an existing flip tax. In his first cause of action, plaintiff alleges that the board lacked authority to adopt the November 1, 1983 resolution and that payment of the fee was made by him under duress. In his second cause of action, plaintiff alleges that the board could not apply the resolution to him because he had already entered into his contract of sale. The third cause of action seeks rescission of the general release signed by plaintiff at the closing on the ground that it was the product of duress. The fourth cause of action for tort and punitive damages is pleaded only against two of the individual defendants. It alleges that they were responsible for the adoption of the flip tax resolution and that their motive was to injure plaintiff in retaliation for plaintiff’s prior actions in connection with the cooperative conversion of the premises.
Defendants acknowledge that the sale of plaintiff’s apartment would not have been approved without payment by plaintiff of the $39,000 fee and tender of his release. Defendants argue that the board’s increase of the flip tax was lawful, there was no duress, and that plaintiff’s signed release is a bar to this action. Defendants also contend that the directors cannot be held personally liable and, because the flip tax is legal, the fourth cause of action fails to state a cause of action against the individual defendants.
The issue of whether a board of directors of a cooperative apartment building can impose a flip tax without shareholder approval has been the subject of a spate of recent litigation and newspaper comment.[1] In Berglund v 411 East 57th Corp. (122 Misc 2d 702), the Civil Court upheld the authority of a board of directors to impose a transfer fee under its broad powers to make prudent management decisions on behalf of the cooperative. In Mayerson v 3701 *113 Tenants Corp. (123 Misc 2d 235), a Justice of this court reached a similar conclusion. In both cases, the transfer fee was a percentage of the sales price of the resold apartment.[2] See, also, dictum in Jamil u Southridge Coop. (102 Misc 2d 404 [App Term, 2d Dept]) and the holding in Reifman v Berkeley (Civ Ct of City of NY, NY County, index No. 63890/74).
In 330 West End Apt. Corp. v Kelly (124 Misc 2d 870), another Justice of this court rejected the reasoning of Berglund and ruled that a resale fee of a percentage of the gross sales price levied by the board was an unlawful amendment of the selling shareholder’s proprietary lease. The appellate courts have not yet addressed the question.
In this case, plaintiff does not challenge the authority of the cooperative to impose a flip tax. On October 5, 1983, when plaintiff contracted to sell his apartment, he believed that a flip tax of $2,500 per apartment, a flat fee charge, was in effect and plaintiff’s contract of sale provided for him to pay it. Plaintiff contends that the $2,500 fee was approved by resolution of the shareholders on May 26, 1981 and that the action of the board of directors on November 1, 1983 was an illegal change of the by-laws. Defendants recognize that the certificate of incorporation of the cooperative forbids the board of directors to change a by-law previously adopted by the shareholders. They take the position that the 1981 resolution of the shareholders was invalid because the meeting notice was defective and the meeting was attended by an insufficient number of shareholders. However, on October 6, 1981, the board of directors confirmed the shareholders’ resolution by amending the by-laws to provide for a $2,500 per apartment transfer fee. It is undisputed that between 1981 and 1983 the $2,500 flip tax was in effect and paid by selling shareholders.
It is not necessary to determine whether the May 26, 1981 shareholders’ resolution was valid. The critical issue is not whether the November 1, 1983 action of the board was void as an amendment of a shareholders’ resolution, *114 but more fundamentally, whether the November 1, 1983 escalation of the flip tax in the form adopted by the board was lawful.
The challenged resolution reads as follows:
“A condition of granting of approval by the Board of Directors to any assignment shall be payment by the Assignor to the Corporation at the time of the transfer of the shares the following transfer fee:
“a. An owner of less than five years, as an original Purchaser from the Sponsor (insiders price), will pay the fee of $200 per share.
“b. An Owner of less than five years, as an outside Purchaser from the Sponsor, will pay the fee of $75 per share.
“c. An Owner for five years or more, as an original Purchaser from the Sponsor will pay the fee of $100 per share.
“d. An Owner for five years or more, as an outside Purchaser, will pay the fee of $50 per share.”
The minutes of the November 1, 1983 meeting and the papers in support of defendants’ motion explain that the costs of maintaining the building’s landmark facade and its financial needs made it essential to generate additional revenue. The choices of the cooperative were to increase maintenance, levy a special assessment or raise the flip tax. The board’s resolution distinguishes between shareholders who have owned their stock for less than five years and those who have been owners for more than five years. According to defendants, “[t]he rationale behind that distinction is that persons who buy an apartment to live in as a home should not be taxed as much as a speculator who buys an apartment solely for investment purposes. Since persons who buy apartments to live in presumably will continue to own their stock longer than speculators, the board determined that stock ownership for more than five years should result in a lower tax.”
Defendants maintain that the board could lawfully increase the flip tax under the power given to them by section 5 of article V of the cooperative’s by-laws which provides in pertinent part: “Fees on Assignment: The *115 Board of Directors shall have authority before an assignment or sublet of a proprietary lease or reallocation of shares takes effect as against the Corporation as lessor, to fix a reasonable fee to cover actual expenses and attorneys’ fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine, in connection with each such proposed assignment including, without limitation, a credit or title search of the apartment or parties. The Board may provide that attorneys’ fees be paid directly to its attorneys * * *.” (Emphasis added.)
Defendants also claim that the imposition of an increased flip tax was a management decision authorized by section 7 of article III of the by-laws of the corporation which gives the board of directors discretion to “prescribe the manner of maintaining and operating the apartment house” and to “determine the cash requirements of the Corporation to be paid * * * by the shareholder-tenants under their respective proprietary leases”.
These two provisions must be read in conjunction with plaintiff’s proprietary lease, the corporation’s certificate of incorporation and the Business Corporation Law. Article 1 of the lease defines “cash requirements” and provides that the maintenance payable by each lessee shall be allocated among shareholders in the same proportion as their shares bear to the total shares issued.[3]
Paragraph 16 of plaintiff’s proprietary lease sets out the terms and conditions for a lease assignment and transfer of shares. There is no mention of a resale fee for the privilege of transferring ownership. Paragraph 16 (a) (iv) provides that as a condition of assignment, the board may require the lessee to pay “a sum fixed by the Directors to cover reasonable legal and other expenses of the lessor and its managing agent in connection with such assignment and transfer of shares”. This provision authorizes a charge for actual expenses incurred by the board in connection with the transfer of shares. It cannot have been intended to cover a flip tax.
*116 The cooperative was formed pursuant to the Business Corporation Law. Section 501 of the Business Corporation Law, entitled “Authorized shares”, provides, in part: “(a) Every corporation shall have power to create and issue the number of shares stated in its certificate of incorporation. Such shares may be all of one class or may be divided into two or more classes.” Subdivision (c) of section 501 mandates that “each share shall be equal to every other share of the same class.”
Paragraph third of the cooperative’s certificate of incorporation reads: “The aggregate number of shares which the Corporation shall have authority to issue is 10,000 shares of par value of One Dollar ($1.00) each, which are to be of the same class, and only one class, and are hereby designated as common stock”.
The courts will review the actions of a corporate board of directors to insure that its fiduciary duty to treat shareholders evenhandedly has been met. (Schwartz v Marien, 37 NY2d 487; Frymer v Bell, 99 AD2d 91.) Here, notwithstanding the seemingly benign intentions of the board, the effect of the November 1,1983 resolution is discriminatory. It violates the cooperative’s certificate of incorporation and subdivision (c) of section 501 of the Business Corporation Law by imposing significantly different charges on owners of shares of the same class. It is defective as well in that it purports to effect material changes in the terms of the proprietary lease which the board lacks authority to accomplish.[4] As a revenue device, the transfer fee violates the formula set forth in the proprietary lease for maintenance charges and assessments. It also adds an unauthorized condition for a lease assignment not contemplated by the lease. The by-laws provisions relied on by defendants are nonspecific and do not permit an interpretation bringing them into conflict with both the Business Corporation Law and plaintiff’s proprietary lease.
A transfer fee of the magnitude contemplated here represents a policy change with inevitable consequences for *117 the investment equity of the shareholders. Assuming that the fee were to be nondiscriminatory, it would still require a lease amendment approved by the shareholders.
It is not necessary to reach plaintiff’s claim that the retroactive application of the flip tax to him is unlawful. Plaintiff is entitled to the relief sought in his first cause of action as against the cooperative. No basis for liability against the other defendants is pleaded in the first cause of action. Since it is not disputed that plaintiff signed a general release under protest at the time he sold his shares, he is entitled to rescission as requested in his third cause of action. Plaintiff’s fourth cause of action alleging intentional acts against him by two individual directors raises issues of fact which require a plenary trial, but he has not set forth a basis for an award of punitive damages.
Accordingly, defendants’ motion is granted to the extent that it is treated as one for summary judgment pursuant to CPLR 3211 (subd [c]) as requested, the demand for punitive damages is stricken from the complaint, the individual defendants and Two Trees Management Co. are granted summary judgment dismissing the first, second and third causes of action as against them; and it is otherwise denied. Plaintiff’s cross motion is granted to the extent that he is awarded summary judgment on his first and third causes of action as against defendant 911 Alwyn Owners Corp. The second cause of action is dismissed as moot. The fourth cause of action, with its request for punitive damages stricken, is severed and continued.

. See, e.g., New York Times, June 24, 1984, Real Estate Section, p 1; NYLJ, June 18, 1984, p 2, col 6; NYU, June 13, 1984, p 1, col 3; NYU, June 6, 1984, p 17, col 1.

. Other types of resale fees are a flat fee per apartment which may be graduated based on apartment size, a flat fee per share, or a percentage of the profit derived from the sale.

. Section 7 of article III of the by-laws gives the board of directors the power to determine the corporation’s cash requirements “except as may be otherwise restricted by the proprietary lease of the Corporation”.

. The provisions for amendment of the proprietary lease have not been submitted to the court, but the lease appears to be a standard form in which modification requires approval by lessees owning either two thirds or 75% of the cooperative’s shares voted at a shareholders’ meeting.