OPINION OF THE COURT
Per Curiam.
Order entered October 7, 1983 modified to the extent that plaintiff is granted summary judgment on her cause of action for recovery of a flip tax and, as modified, order affirmed, with $10 costs to the respondent.
Appeal from order dated September 6, 1983 (L. Friedman, J.) dismissed, without costs, as nonappealable.
We have deemed the notice of appeal dated September 13, 1983 amended to state that an appeal is taken from the order entered October 7, 1983, although premature as to that order (CPLR 5520 [c]).
*931 The issue on appeal involves the validity of defendant residential cooperative corporation’s imposition of a flip tax upon plaintiff, a former proprietary lessee. In 1981, plaintiff signed a subscription agreement to purchase the shares allocated to her apartment at the offering price of $15,460. On August 26, 1981, plaintiff entered into a contract to sell the apartment to one Richard Kates (not a party here) at a purchase price of $40,460. Kates paid $15,460 to plaintiff on the date of the contract, the balance to be paid at closing. Defendant took title to the building on October 15,1981; the purchase price of $15,460 (advanced by Kates) was paid to the sponsor on that date and plaintiff became the owner of the shares allocated to the apartment.
On November 12,1981, the first annual meeting of the shareholders took place and a board of directors was elected. On that day, the board approved a resolution imposing a flip tax of 15% on all profit derived from the sale of any cooperative apartment, “effective immediately”, subject to shareholder approval. In December 1981, the board approved Kates’ application to purchase plaintiff’s shares and assume the proprietary lease. The shareholders, at a special meeting on January 14, 1982, authorized the imposition of a flip tax upon the sale of apartments, following which the board, on January 20, adopted a resolution imposing a flip tax of 15% on the profit “resulting from any sale or transfer effected on or before November 30, 1981 or made pursuant to any contract entered into on or before that date”. The board expressly declined to except the sale of plaintiff’s shares from the general provision imposing a transfer fee.
On January 21, 1982, plaintiff transferred her shares and proprietary lease to Kates and paid $3,750 (15% of $25,000 profit) to defendant under protest. Plaintiff (pro se) then commenced the instant action against the cooperative corporation to recover the flip tax. The complaint asserted additional claims for fraud upon plaintiff and assault of her infant daughter. Insofar as these latter claims are concerned, defendant’s motion for summary judgment was granted at Special Term. However, the court found triable issues relating to the flip tax claim. Defendant appeals.
It is defendant’s contention that the imposition of the flip tax was within the discretionary authority of the board to manage the business of the corporation, as set forth in applicable provisions of its bylaws and the Business Corporation Law § 701. Article V, § 6 of the corporate bylaws provides in pertinent part: “Section 6. Fees on Assignment. Subject to the provisions of the form of proprietary lease adopted by the Board of Directors * * * *932 the Board of Directors shall have authority to fix by resolution and to collect, before any assignment of a proprietary lease or any reallocation of shares takes effect as against the corporation as lessor, reasonable fees to cover the corporation’s expenses and attorneys’ fees in connection with such proposed assignment, or reallocation, or both, as the case may be” (emphasis added).
Similarly, article VI, § 5 of the bylaws provides: “Section 5. Fees on Transfer. Subject to the provisions of Section 6 of Article V hereof and subject further to the provisions of the proprietary lease, the Board of Directors shall have authority to fix by resolution and to collect, before the transfer of any shares, reasonable fees to cover the corporation’s expenses and attorney’s fees in connection with such proposed transfer.”
Paragraph 16 of the proprietary lease itself sets forth the terms and conditions for a lease assignment and transfer of shares. No mention is made of a flip tax. Specifically, paragraph 16 states:
“16. (a) The Lessee shall not assign this Lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment or transfer shall take effect as against the Lessor for any purpose; until * * *
“(iv) All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares” (emphasis added).
It is also noted that the offering plan did not contemplate a transfer fee when the plan was first offered in early 1981. In describing the features of the plan, the plan stated that an owner had “the right to sell his apartment and retain all proceeds of such sale * * * provided the prospective purchaser * * * is first approved by the apartment corporation’s Board of Directors or (if they refuse) tenant-shareholders owning at least sixty-five (65%) of the * * * outstanding shares”.
It will be seen that neither the cooperative’s bylaws nor the proprietary lease gives to the board broad power to impose fees upon the transfer of ownership. The lease merely authorized the board to collect expenses incidental to the assignment and transfer of shares (e.g., attorneys’ fees). The imposition of a flip tax did not come within this limited delegation of authority, and amounted to a material modification of the proprietary lease which could not be accomplished absent shareholder approval pursuant to paragraph (6) of the lease (330 W. End Apt. Corp. v Kelly, 124 Misc 2d 870 [Sup Ct, NY County]; FeBland v Two *933 Trees Mgt. Co., 125 Misc 2d 111 [Sup Ct, NY County]; see also, Margolies, Increasing Number of Cooperatives Produces High Volume of Litigation, NYU, June 6, 1984, p 17, col 1). It is true that the shareholders approved a flip tax on January 14, 1982, furnishing the authority fbr the board’s flip tax resolution on January 20. However, it is undisputed that prior to January 1982, plaintiff had entered into the contract of sale with Kates; that Kates had advanced plaintiff the moneys to purchase plaintiff’s shares; and that the board had approved Kates’ purchase of plaintiff’s shares and the assignment of plaintiff’s proprietary lease. In short, the essence of the transaction between plaintiff, defendant and Kates was substantially completed prior to the shareholders’ authorization of a flip tax. We do not think the board’s resolution of January 20, 1982, insofar as it purports to impose a flip tax on contracts of sale entered into on or before November 30,1981, is enforceable. Of relevance is paragraph (1) (c) of the proprietary lease, which states that “[njo determination of Cash Requirements shall have any retroactive effect on the amount of rent payable by the Lessee for any period prior to the date of such determination”. Since the payment of rent (i.e., maintenance) and the payment of a flip tax both relate to defraying operating costs of the building, it is reasonable to conclude that retroactive imposition of a flip tax violates the spirit (if not the precise letter) of this section of the proprietary lease.
A review of the record reveals no real, bona fide issues requiring a trial. This dispute presents only questions of law. If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross motion (CPLR 3212 [b]). The exercise of this right is not limited to the Court at Special Term, but may take place on the appellate level as well (Howell v Davis, 58 AD2d 852, affd 43 NY2d 874). Accordingly, we have modified the order appealed from to the extent of granting summary judgment in plaintiff’s favor on her claim for recovery of the flip tax.
Dudley, P. J., Riccobono and Sandifer, JJ., concur.