OPINION OF THE COURT
Edward H. Lehner, J.
The main legal issue presented on this motion to dismiss and for summary judgment is whether the shareholders of a cooperative corporation may, by ratifying the board of directors’ prior ineffective resolution to enact a stock transfer fee (flip tax), retroactively impose the fee where the contract to assign the shares was entered into and board approval for the sale was requested before the ratification.
This court holds, based upon general principles of common law, that it may not.
Plaintiff is the former proprietary lessee and shareholder who seeks to recover a sublet fee of $1,168.20 and a stock transfer fee of $7,504 paid to the cooperative corporation.
THE CONTRACT TO SUBLET AND ASSIGN
Plaintiff was a tenant in the building when the offering plan to convert to cooperative ownership was presented and in February of 1984 became the proprietary lessee of her apart *636 ment. On March 6, 1984 plaintiff entered into a contract to sublet the apartment commencing June 1, 1984, and to transfer to the sublessees her interest in the shares and proprietary lease.
ACTIONS OF THE BOARD
On March 14, 1984 the first board of directors of the cooperative corporation was elected. At their first regular meeting on March 28, the board passed a resolution to levy a fee of 7% on the profit from the sale of shares by any shareholder. On April 26, the board resolved to require a sublet fee of 25% of the total maintenance charges due over the period of a subletting. At the same meeting they approved an amended resolution regarding the transfer fee, which provided for the following:
"(b) The amended resolution on tax on sale or transfer of proprietary lease or shares in the corporation should be submitted to the shareholders of the corporation for purposes of ratification.
"(c) The proprietary lease should be amended so as to empower the Board of Directors to impose a tax on sale or transfer of proprietary lease or shares in the corporation.
"(d) The amendment to the proprietary lease should be submitted to the shareholders of the corporation for purposes of ratification.”
Defendant asserts that on May 4 plaintiff sought board approval for the proposed sublet. Plaintiff claims she did so before April 26. On May 21 such approval was granted.
ACTIONS OF THE SHAREHOLDERS
On May 21 the shareholders adopted an amendment to the proprietary lease imposing the flip tax and a resolution ratifying the board’s earlier resolution of March 28.
PAYMENT OF FEES
On May 22, 1984 the board requested payment of the sublease fee, which plaintiff paid on June 1, 1984. The shares of stock and the proprietary lease were transferred to the new owners in March of 1985, at which time the flip tax was paid.
THE BYLAWS AND THE PROPRIETARY LEASE
To determine the rights of the parties it is necessary to *637 examine both the corporate bylaws and the proprietary lease. (Brennan v Breezy Point Coop., 63 NY2d 1022 [1984]; see also, Jackson v 239 Cent. Park W. Corp., NYLJ, Dec. 27, 1984, p 5, col 2 [Sup Ct, NY County].)
Article V, section 1, paragraph 1 of the bylaws provides: "The Board of Directors shall adopt a form of proprietary lease to be used by the Corporation for the leasing of all apartments * * * Such proprietary leases * * * shall contain such restrictions, limitations and provisions in respect to the assignment thereof, the subletting of the premises demised thereby and the sale and/or transfer of the shares * * * and such other terms, provisions, conditions and covenants as the Board of Directors may determine.”
The proprietary lease, prior to any changes made by the board of directors or the shareholders, provided that (para 5): "the Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors, or given in writing by a majority of the Directors or, if the Directors shall have failed or refused to give such consent, then by lessees owning at least 65% of the then issued shares of the Lessor * * * Any consent to subletting may be subject to such conditions as the Directors or lessees, as the case may be, may impose. There shall be no limitation on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to a subletting.”
THE SUBLET FEE
In Zuckerman v 33072 Owners Corp. (97 AD2d 736 [1st Dept 1983]) a provision in a proprietary lease virtually identical to the provision before this court was held to authorize a board resolution imposing a fee of $600 for renewal of a sublease, the court noting that "[t]he clear import of the broad language employed is that the board may impose any lawful conditions, including monetary conditions” (p 737).
Plaintiff does not argue that the sublet fee of 25% of the maintenance due over the term of the sublease is excessive. Her only contention is that it was imposed retroactively, and should not be applicable to her. She claims that the application for approval of the sublease, dated April 19, 1984, was submitted before the April 26 resolution, but was not "accepted” by the board until May 4. Defendant contends that *638 the sublease application was submitted on or about May 4, and since the board resolution had already been adopted, the sublet fee was effective as to the instant transaction.
Defendant cooperative has submitted affidavits from its president, from the property manager of the defendant management company, and from Louis Falcone, one of the proposed subtenants (who personally submitted the application), all of which assert that the application to sublet was not submitted until May 4, after the board resolution imposing the fee. Movant’s submission of such evidentiary proof in admissible form has been opposed by nothing more than the affirmation of plaintiff’s attorney. Although the attorney signed the application, he did not submit it himself. He does not specifically assert when it was submitted, and does not claim personal knowledge of this crucial fact. Thus, plaintiff has failed to demonstrate the existence of a factual issue requiring a trial on its contention that the application was submitted prior to the April 26 meeting. Thus, since the board resolution validly imposed the charge, plaintiff is not entitled to a refund on her application submitted after such adoption. Therefore, the portion of the complaint seeking a refund of the sublet fee is dismissed.
THE TRANSFER FEE
As of this writing, the law in this department is that where the proprietary lease does not authorize the board to impose a transfer fee, a shareholder amendment of the lease is necessary to enable the board to enact the fee. (Fe Bland v Two Trees Mgt. Co., 125 Misc 2d 111 [Sup Ct, NY County 1984], affd 109 AD2d 1110, lv granted 110 AD2d 1093 [1st Dept 1985]; 330 W. End Apt. Corp. v Kelly, 124 Misc 2d 810 [Sup Ct, NY County 1984], affd 108 AD2d 1107, lv granted 110 AD2d 1094 [1st Dept 1985]; Berglund v 411 E. 57th Corp., 127 Misc 2d 58 [App Term, 1st Dept 1985], revg 122 Misc 2d 702; Wallach v 239 Cent. Park W. Corp., NYLJ, Oct. 4, 1984, p 7, col 2 [Civ Ct, NY County]; Jackson v 239 Cent. Park W. Corp., supra.)
Plaintiff asserts that since the board resolution in this case was ineffective to impose such fee, a shareholder amendment of the proprietary lease was necessary to do so. She argues that since the purported ratification by the shareholders took place after plaintiff contracted to assign the shares and after she requested board approval of the proposed sale, the fee cannot be imposed as to her.
*639 Defendant cooperative takes the position that the shareholder ratification relates back to the date of the board’s resolution to impose the transfer fee, which occurred prior to the submission of the request for board approval of the proposed assignment.
In McIntyre v Royal Summit Owners (126 Misc 2d 930 [App Term, 1st Dept 1984]), as in this case, neither the cooperative’s bylaws nor the proprietary lease gave the board broad power to impose fees upon the transfer of ownership. The shareholders approved a transfer fee, furnishing the authority for the board’s resolution enacting such fee, after the proprietary lessee had entered into a contract of sale and after the board had approved the transfer of the shares and assignment of the proprietary lease, but before the closing.
The court held that since "the essence of the transaction * * * was substantially completed prior to the shareholders’ authorization of a flip tax” the fee was unenforceable as to that transaction. (McIntyre v Royal Summit Owners, supra, p 933.) In so doing, the court found that the retroactive application of such fee violated the spirit of a paragraph of the proprietary lease which stated that " '[n]o determination of Cash Requirements shall have any retroactive effect on the amount of rent payable by the Lessee for any period prior to the date of such determination’.” (126 Misc 2d, at p 933.)
As in McIntyre (supra) here the contract of sale was entered into and board approval of the proposed sale was sought by plaintiff prior to the shareholder resolution authorizing the fee.
However, here it is not claimed that the proprietary lease contains a provision such as was relied upon by the court in McIntyre (supra). Hence, the issue the court must decide is whether the ratification can relate back to the date of the directors’ resolution imposing the transfer fee so as to validate such fee as of such date.
In Fe Bland v Two Trees Mgt. Co. (125 Misc 2d, at p 117), plaintiff contended that the retroactive application of the transfer fee constituted an "illegal impairment of contract rights”, but the court found it unnecessary to reach such claim. While dictum in Berglund v 411 E. 57th Corp. (127 Misc 2d, at p 59) suggests that a transfer fee may be effective if the board resolution is later ratified by the shareholders, the issue was not before that court since there was no shareholder ratification in that case.
*640 "Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority”. (Holm v C.M.P. Sheet Metal, 89 AD2d 229, 232 [4th Dept 1982].) It "relates back and supplies original authority” for the unauthorized act (supra, p 232).
A clear exception to this rule is recognized, however, for "[w]here the right of a third person has thus intervened between an act and its ratification, the ratification is ineffective.” (People ex rel. Goldschmidt v Board of Educ., 217 NY 470, 474 [1916]; see also, Pape v Home Ins. Co., 139 F2d 231, 235 [2d Cir 1943]; Cook v Tullis, 85 US [18 Wall] 332, 338 [1873, Field, J.]; Restatement [Second] of Agency § 101 [c], comment c.)
Stated another way, "[t]he relation back of a ratification to the time of the original transaction [herein the initial board resolution imposing the transfer fee] is fictitious and the fiction should be limited so that it will not work injustice.” (2 Williston, Contracts § 278A, at 279 [3d Jaeger ed 1959].)
Although board approval of the proposed transaction was given immediately after the adoption of the shareholder resolution authorizing the fee on May 21, 1984, plaintiff had requested such approval on an earlier date. Plaintiff had taken all necessary steps within her power to effect the sale and, under these circumstances, the "essence of her transaction” was substantially completed prior to the shareholders’ enactment of the transfer fee. Although the closing took place 15 months after the contract was entered into and 14 months after the shareholders’ resolution to impose the fee, while the closing in McIntyre (supra) occurred five months after contracting and a mere week after the shareholders’ resolution, this distinction does not call for a different result. Since plaintiff’s rights arose during the period intervening between the board’s and the shareholders’ actions, the ratification does not relate back to the date of the ineffective board resolution and, thus, the transfer fee is unenforceable as to her transaction.
Since there are no issues of fact presented, summary judgment is granted to plaintiff, despite her failure to move therefor, in the amount of $7,504 with interest from March 22, 1985 (CPLR 3212 [b]), and the clerk may enter judgment accordingly.