OPINION OF THE COURT
David Otis Fuller, Jr., J.
In this small claims action, the plaintiff is seeking the return of a “flip tax” of $2,760 (2% of the $138,000 sale price) from the defendant cooperative association that he was required to pay when he sold his unit on December 23, 2004.
The plaintiff entered into the contract of sale in October of 2004, which required a down payment of five percent. It contained a form provision that the seller would pay the flip *720 tax, if any. The imposition of a flip tax arose from a resolution of the board of directors passed on October 28, 2004, which read as follows: "A flip tax of 2% of the sale price of a unit was approved by the board, effective November 1, 2004.”
On November 30, 2004, the resolution was approved by over 75% of the voting shares required for a change to the proprietary lease. The plaintiff contends that the flip tax should not apply to him because the contract of sale was entered into prior to the effective date of the resolution. The defendant counters that the date of sale which took place after the flip tax came into effect is determinative. But by the time the flip tax became effective, the plaintiff had already entered into the contract of sale and received the down payment. The essence of the transaction was substantially completed, except for board approval, prior to the authorization by the shareholders of the flip tax which should not be applied retroactively. (See McIntyre v Royal Summit Owners, 126 Misc 2d 930, 933 [App Term, 1st Dept 1984].) But the defendant argues that, despite the above, the contract was contingent upon financing and board approval and thus did not become effective until the purchaser, possessed of a bank commitment, was approved by the defendant. These contingencies do not prevent the contract from being a binding obligation. The financing was obtained before the resolution became effective. As for board approval, which took place the same day the flip tax was ratified by the shareholders, the contract of sale could have been voided by an unfavorable board vote, but as between buyer and seller, the contract was binding as to all terms including the purchase price and down payment which netted less proceeds with the deduction for the flip tax. As such, it was effective as between them prior to board approval and ratification of the flip tax. Moreover, it would be bad public policy to put the beneficiary of the flip tax, the cooperative association, in a position where by delaying the approval of a candidate, it could insure application of the flip tax. Unlike the case in Holt v 45 E. 66th St. Owners Corp. (161 AD2d 410, 411 [1st Dept 1990]), there was no specific agreement that a flip tax would be imposed on the sale. Nor was a flip tax provision contained in the offering plan adopted prior to the date of the contract of sale. (See 1326 Apts. Corp. v Barbosa, 147 Misc 2d 264, 267-268 [Civ Ct, NY County 1990]; Holt v 45 E. 66th St. Owners Corp., supra.) The defendant also urges that the plaintiff did not reserve his rights by having the disputed flip tax held in escrow or by paying under protest. However, the *721 defendant’s position at the closing was that the flip tax was due and the plaintiff could reasonably have understood that the payment was a necessary condition of the closing. His payment of it cannot be deemed voluntary. (See Austin Instrument v Loral Corp., 29 NY2d 124, 133 [1971].)
For the reasons stated, the plaintiff is entitled to the return of the flip tax of $2,760.