ELYSE FRYMER et al., Plaintiffs-Appellants, v RICHARD BELL et al., Individually and as Members of the Board of Directors of 107 West Apartment Corporation, et al., Respondents.

First Department, February 14, 1984

APPEARANCES OF COUNSEL

*Reid L. Ashinoff* of counsel (*Samuel Goldman* with him on the brief; *Wilner, Ross, d'Incelli, Goldman & Ashinoff,* attorneys), for plaintiffs-appellants.

*Karen Shatzkin* of counsel (*Kornstein, Meister & Veisz,* attorneys), for respondents.

OPINION OF THE COURT

FEIN, J.

Plaintiff Elyse Frymer, a tenant of long standing at 245 West 107th Street in Manhattan, exercised her option to purchase a proprietary lease for her apartment in connection with the building's plan for co-operative conversion. In

addition, after private negotiation with a long-standing fellow tenant, Mrs. Kutt, Frymer sought to purchase Kutt's proprietary lease so that the Kutt apartment could be used by Frymer's grandchildren. This latter transaction is at issue here.

The terms of the agreement between the two tenants were that Frymer would pay Kutt the $16,099.68 insider's purchase price, including the $1,000 down payment, plus $3,000. On April 4, 1980 these tenants signed a form contract prepared by Frymer's attorney, memorializing this agreement, which basically conformed with a handwritten binder signed by Kutt five weeks earlier.

The co-operative conversion plan became effective on April 15, at which time Kutt assigned her proprietary lease to Frymer in accordance with the terms of their contract. The closing took place notwithstanding a clause subjecting performance of this contract to approval by the co-operative corporation's directors or shareholders. Approval could not be obtained at the time of the closing because the co-operative did not get around to electing a board of directors and holding its first meeting until May 20, five weeks after the closing and the effective date of the co-operative conversion.

Ten months later, on March 31, 1981, the board disapproved the transfer of the apartment from Kutt to Frymer. The record reveals that even though board members had confidentially informed Frymer that approval would be forthcoming, the five-member board unanimously disapproved because Frymer had failed to remit to the corporation a "transfer tax" on "resale" of shares in the co-operative, in the nature of an "additional fee", somewhat in excess of $8,000. Although the evidence is to the contrary, a majority of the board asserted that even if this illegal tax had been paid, they would have disapproved Frymer's purchase because of illegal subletting to her grandchildren, delay in submitting the application, and unauthorized alterations to the premises.

In this action for specific performance and declaratory and injunctive relief to preserve Frymer's rights in the former Kutt apartment, Trial Term ruled that the board's decision, "regardless of how illogical or irrational", must be

upheld insofar as it is not proscribed by law. Trial Term properly found the board's calculation of the transfer tax to be inconsistent with the terms of the co-operative conversion offering plan, as amended, and thus illegal. The plan provided for this "additional fee" to be based upon 20% of the difference (after deduction for commissions and expenses) between "the price set forth in the subscription agreement executed by the seller upon his original acquisition of the shares and proprietary lease to be transferred and the resale price set forth in the executed contract of sale between such seller and the purchaser". The price actually paid by Kutt for the original acquisition of the proprietary lease under the terms of the subscription agreement was $3,000 less than her resale price to Frymer. Thus, the "additional fee" should have been no more than 20% of that profit margin, or $600. Moreover, under the terms of the offering plan, this amount should have been paid by Kutt, the seller. Instead, without any authority for doing so, the board set the transfer tax as 20% of the difference between the prospectus price and the "market value" of the apartment, which it arbitrarily fixed at 3.75 times the prospectus price. There was no competent evidence of "market value", and there was no lawful basis for its use. The board's calculation would require an additional fee of $8,854.82, an illegal exaction. Trial Term was correct in finding no basis in fact for such an assessment.

However, Trial Term found the balance of the board's decision, grounded on "other reasons, whether valid or not, * * * whether rational or not," to be sufficient on which to base rejection of the application. Among these reasons were that Frymer had proceeded to make repairs to the apartment in question without strictly complying with the rules of the building's construction committee, and that she had sublet the premises to her grandchildren without prior approval of the board.

As to the repairs, the chairman of the construction committee conceded in testimony that these were not major alterations such as would require written prior approval under the guidelines. Those guidelines specify that for "minor alterations" no formal application or review by the board would be necessary. The board's only interest in

such repairs might be to require the tenant to submit "a standard form releasing the Board from any legal responsibility for the consequences of the alteration." The Trial Judge made it clear during trial that defendants simply had not made out a case that Frymer had failed to comply with the rules and guidelines on alterations. On the record it is plain that no violation of these guidelines was proved and thus this could not have been a valid reason for denying the application for the transfer.

To the extent that the trial court relied upon this as one of the grounds for disapproval, the court's conclusion is without sufficient basis in the record. The court's comments on the trial so indicate. Any such finding is plainly against the weight of the evidence.

The court found, as a fact, amply supported by the record, that the board members knew of the need for the repairs plaintiff contemplated and that she was actually engaged in making such repairs to the apartment, that she was paying maintenance on that apartment, that Kutt had moved out and that Frymer had arranged to purchase the interest of Kutt in the apartment. Approval of this was indicated by board members. The court further found that at no time was Frymer advised by any member of the board that she ran the risk of having the board disapprove her application and that therefore she was incurring expenditures she was making on repairs at her own risk.

The record demonstrates Frymer was assured there was no problem respecting approval, and that only when she refused to pay the illegal tax was approval withheld.

The trial court concluded that the board could reject the application unless it was equitably estopped from doing so on the basis of its own conduct. However, the court ruled that Frymer could not avail herself of equitable estoppel because she came into court with unclean hands because of overreaching in her dealing with Kutt. That conclusion is unsupported on the record. The fact that Frymer, aided by counsel, was dealing with a 90-year-old seller does not warrant the conclusion that Frymer was guilty of overreaching. Despite her age, Kutt was apparently an independent person of intelligence and competence who acted on the understanding that she would be leaving her rent-

controlled apartment to move to Canada with her daughter, who was well aware of the transaction. Frymer certainly could not have foreseen that Kutt, within two months of vacating the apartment, would be placed by her daughter in a nursing home, with the daughter pocketing the $3,000.

Kutt was neither made a party nor called as a witness. Thus, there was no basis in the record for a finding that there was overreaching or that she was misled. The court had no evidence from her as to her intentions with regard to this sale and her plan to move to Canada with her daughter. The fact that the daughter subsequently took the profits from this sale and put her mother in a nursing home does not establish any overreaching by Frymer. There is no evidence that Frymer had anything to do with this. Moreover, this took place long after the sale. The testimony was clear that at the time of the sale Kutt was handling her own financial transactions, was fluent in four languages and had always managed her affairs by herself. Frymer and Kutt were old friends ("landsmen") and they dealt face to face in this transaction. There is no evidence of concealment. Counsel's sole role was to draft the form contract of sale.

So far as appears from the record, Kutt has never challenged the agreement. There is no evidence in the record of any objection by Kutt. Moreover, we are advised that Kutt, now represented by counsel, has not sought relief from her agreement with Frymer. Moreover, the profit made by Kutt on the basis of the price paid to her by Frymer was nearly 20%. In the light of the disrepair of the apartment, the price was not so substantially below the prices paid on comparable sales as to indicate overreaching or unconscionability.

The doctrine of unclean hands upon which the trial court relied does not apply under the circumstances. Kutt asked for no relief and it did not lie in the mouth of the board to seek relief on her part. In order for the court to rescind the contract, Kutt was an indispensable party.

In an action for rescission, all parties to the agreement must be brought before the court (*McKnight v Bank of N. Y. & Trust Co.*, 254 NY 417, 421; *Gugel v Hiscox*, 216

NY 145, 153; *Galusha v Galusha,* 138 NY 272, 280-281; CPLR 1001, subds [a], [b]; *Matter of McQuay Group v New York Convention Center Dev. Corp.,* 87 AD2d 507; *Thurston v Bunyan Hardware Stores,* 80 AD2d 971). Contrary to defendants' contention, there was no obligation on the part of the plaintiff to make Kutt a party. The plaintiff did not seek rescission. There is not one whit of evidence in the record that Kutt desires rescission. Only a party or one privy to a contract may sue for rescission or cancellation (*Matter of Grossman v Herkimer County Ind. Dev. Agency,* 60 AD2d 172, 180; *Joannes Bros. Co. v Lamborn,* 199 App Div 588, 591). The co-operative corporation which sought and obtained rescission is neither a party nor privy to the contract.

It is plain on this record that the sole objective of the board was to exact an illegal tax. It should not be allowed a profit from its own wrong (*Thurston v Bunyan Hardware Stores, supra; General Stencils v Chiappa,* 18 NY2d 125, 127; *Glus v Brooklyn Eastern Term.,* 359 US 231).

Aside from the fact that defendants were not a party to the transaction between Frymer and Kutt which defendants seek to rescind, defendants are plainly in no position to raise a question of unclean hands. The doctrine of unclean hands is only available where plaintiff is guilty of immoral or unconscionable conduct directly related to the subject matter, and the party seeking to invoke the doctrine is injured by such conduct (*Weiss v Mayflower Doughnut Corp.,* 1 NY2d 310, 316). In other words, relief to the plaintiff cannot be denied unless the immoral or unconscionable act alleged by the defendant was done to the defendant himself. "If a plaintiff is not guilty of inequitable conduct toward the defendant in the transaction, his hands are as clean as the law requires" (*Brown v Lockwood,* 76 AD2d 721, 729).

The trial court sought to benefit defendants because of a wrongful act allegedly committed by Frymer, namely, that the price she paid to Kutt for the apartment was considerably below fair market value. The record does not support the conclusion. There is no basis for finding that Frymer's attempted purchase of the Kutt apartment at the insider offering price left Frymer with unclean hands. There was

nothing illegal, immoral or unconscionable about trying to capitalize upon an advantageous offer. Defendants had no right to dictate the margin of profit Kutt should have received from Frymer in their private negotiation for the transfer. While the corporation had an interest in the size of this profit margin, inasmuch as its "additional fee" was a percentage based thereon, the trial court's finding that the corporation thus "became legally entitled to a much smaller fee than if the sales price was the fair market value of the apartment in question" is no basis for concluding that what Frymer did was immoral or unconscionable. As the trial court ruled, the co-operative plan did not require sales to be at "fair market value" and the value sought to be assigned by the board was unconscionable. As the trial court found, defendants sought an illegal exaction. The judgment appealed from rewards this misconduct.

The only remaining basis for disapproving the transaction was that Frymer had in effect already been subletting the apartment in question to her grandchildren by the time the board acted. But the record contained no derogatory data, financial or otherwise, about these grandchildren who had previously been living with Frymer in her own apartment. This reason is without merit, plainly a make-weight to support the board's illegal demand.

The judgment declares the Frymer-Kutt contract and the stock power null and void, directs plaintiff to vacate the apartment, requires Kutt to return the $19,100 she received, imposes responsibility for the $19,100 on the co-operative board and imposes a lien on the stock in favor of Frymer to the extent of the $10,000 found to have been expended by her for repairs, to be repaid upon sale of the apartment.

It is plain that the court was without power to render such a judgment in the absence of Kutt, and without her consent and without competent evidence of value.

The judgment, Supreme Court, New York County (Arnold Fraiman, J.), entered February 10, 1983 after non-jury trial, dismissing the complaint and directing rescission of the contract of sale of a co-operative apartment, should be reversed on the law and the facts and the action remanded for a new trial, with costs to abide the event.

SANDLER, J. P., BLOOM, MILONAS and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 10, 1983, unanimously reversed, on the law and the facts, and the action remanded for a new trial, with costs to abide the event.