■ Steven Dante, Appellant, v 310 Associates, Respondent, et al., Defendants.—Judgment, Supreme Court, New York County (Robert E. White, J.), entered March 25, 1985, which, in a declaratory judgment action brought to determine plaintiff's right to purchase the cooperative shares allocated to apartment 4WB in the subject building, declared, *inter alia,* that plaintiff did not have the right to purchase those shares, reversed, on the law and on the facts, with costs, and judgment should be entered declaring that plaintiff did have the right to purchase the cooperative shares and timely exercised that right, and plaintiff shall have 30 days from the date of entry of this order to resubmit his down payment, with closing to take place within 60 days.

This declaratory judgment action concerns the right of plaintiff Steven Dante, the occupant since June 1980 of apartment 4WB in the building located at 310 West 79th Street in Manhattan, to purchase the cooperative shares allocated to that apartment under the conversion plan sponsored by defendant 310 Associates, which was declared effective September 2, 1982. Defendant was formerly the owner of the building, and presently owns the subject shares.

The essential facts are not in dispute. In April 1978, Joseph Norkus executed a lease for rent-stabilized apartment 4WB for a three-year term expiring April 30, 1981. The lease, which was thereafter extended for another three-year term expiring April 30, 1984, specifically permitted the tenant to sublease the apartment without any stated restrictions or conditions. In June 1980, plaintiff moved into the apartment, with Norkus' permission, and he has resided there ever since.

On March 24, 1981, an attorney, David J. Mandel, wrote the following letter to Norkus: "My client, 310 Associates, informs me that you have sublet your apartment in violation of your lease. You are hereby advised to remove Mr. Dante from the premises immediately." Another letter to Norkus from the same attorney, dated April 7, 1981, ordered the apartment to be vacated by April 30, and advised that the lease would not be renewed in view of plaintiff's occupancy. Norkus' reply (undated) stated in pertinent part: "My lease, signed on the 18th of April, 1978, clearly gives me the option to sublease. Mr. Dante was rooming with my son and now has the apartment to himself. He is in 4WB with my knowledge and permission. I hope this settles any misunderstanding." The defendant apparently accepted the fact that plaintiff occupied the apartment as Norkus' sublessee, as provided in the lease, since the lease was thereafter renewed despite the April 7

threat that it would not be renewed, and no further complaints were voiced by defendant with respect to plaintiff's continued occupancy.

On March 1, 1982, a plan for the cooperative conversion of the building was accepted for filing by the Attorney-General. The plan was declared effective September 2, 1982, and it provided that the time to purchase expired September 18, 1982. It is undisputed that plaintiff Dante, with Norkus' oral permission, timely forwarded his subscription and the balance of the down payment to the sponsor. These were returned by mail on September 20, 1982 under covering letter which stated, without further explanation: "I am returning herewith the Subscription Agreement and checks forwarded to me which have been rejected by the Sponsor."

In May 1984, when the current lease expired, defendant instituted a holdover proceeding against Dante in Civil Court. Dante interposed several affirmative defenses, each based upon his having timely and lawfully subscribed to the purchase of the cooperative shares. The parties stipulated that the summary proceeding would be held in abeyance pending the commencement by Dante of the instant declaratory judgment action determining their respective rights and obligations. We hold that plaintiff Dante was entitled as subtenant to purchase the shares allocated to apartment 4WB, that the defendant wrongfully rejected plaintiff's tender, and we accordingly order the entry of a judgment declaring to that effect.

Our analysis necessarily starts with General Business Law § 352-eeee (2) (d) (ix) which provides that "tenants in occupancy on the date the attorney general accepts the [cooperative or condominium] plan for filing shall have the exclusive right to purchase their dwelling units or the shares allocated thereto", a right reaffirmed in almost identical language in Code of the Rent Stabilization Association of New York City, Inc. (Code) § 61 (4) (b). Certainly, plaintiff was "in occupancy" at the time of the offering, and thus the major question presented is whether, for the purpose of acquiring the shares allocated to the apartment, he was a "tenant" within the contemplation of the statute and the Code provision.

We find dispositive of that issue Code § 61 (4) (a) (v), which regulates "CONVERTING TO A COOPERATIVE OR CONDOMINIUM FORM OF OWNERSHIP". That section provides that in computing the requirement that 35% of the tenants in occupancy agree to purchase, "[p]urchases by the tenant of record of a subleased apartment will be included; sub-tenants will have no

right to purchase unless approved by the tenant of record and only then would purchases by sub-tenants be included". Consistent with this controlling section, the conversion plan explicitly recognized the right of a subtenant to purchase with the approval of the tenant of record. Plaintiff Dante was a subtenant, and he had at all pertinent times the permission of Norkus, the tenant of record, to purchase the apartment. The defendant was accordingly bound to accept plaintiff's timely tender of the subscription and down payment, and to proceed to closing. We observe that if defendant had had any genuine doubts as to Norkus' approval of plaintiff's subscription, a simple query or request for confirmation would have sufficed to settle the matter. Clearly the defendant had no such doubts in this case. Therefore, no issue is presented regarding the legal effect of a sublessee's unreasonable refusal to confirm to a sponsor that the tenant of record approved the sublessee's purchase.

The trial court held that no sublease existed between Dante and Norkus because they had not memorialized their agreement in writing, citing General Obligations Law § 5-703 (2). We disagree. The law is clear that oral contracts that come within the provisions of the statute are not void, but voidable; that if the Statute of Frauds is not timely interposed as a defense by the party to be charged or his successors in interest, it is waived; and that the Statute of Frauds is a personal defense which cannot be interposed by a third party. *(Felicie, Inc. v Leibovitz,* 67 AD2d 656; *Raoul v Olde Vil. Hall,* 76 AD2d 319; 1 Rasch, New York Landlord and Tenant, Summary Proceedings, § 43 [2d ed].)

The trial court's further conclusion that even if Dante were a subtenant, only Norkus, as the tenant of record, could exercise the right to purchase seems to us clearly irreconcilable with the language of the offering plan and the regulation governing cooperative conversion discussed above.

Finally, we disagree with Trial Term's conclusion that plaintiff is guilty of laches and thus barred from enforcing his right to purchase. The essential elements of that doctrine are unreasonable and inexcusable delay by the plaintiff in undertaking to enforce his rights, which result in prejudice to the opposing party. *(See, Matter of Barabash,* 31 NY2d 76, 81; *Groesbeck v Morgan,* 206 NY 385, 389; *Calhoun v Millard,* 121 NY 69, 82.) We find neither element present in the instant case. Concur—Kupferman, J. P., Sandler, Ross, Carro and Wallach, JJ.