**Herman BISTRICER, Tower Investments of Miami, Inc. and Rhine Investments, N.V., Plaintiffs,**

v.

**Moishe BISTRICER a/k/a Morris Bistricer a/k/a Moric Bistricer, David Bistricer, Bistricer Group, Bist Management Corp., and John Does 1–1000, Defendants.**

**No. 85 C 4381.**

United States District Court, E.D. New York.

May 5, 1987.

Paul, Weiss, Rifkind, Wharton & Garrison (Martin Flumenbaum and Francis M. Holozubiec, of counsel), New York City, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler (Julius Berman and Aaron Stiefel, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs appeal pursuant to Federal Rule of Civil Procedure 72(a) from portions of a discovery order by Magistrate Chrein and ask the court pursuant to Federal Rule of Civil Procedure 12(f) to strike defendants' affirmative defense of "unclean hands." The action involves an intra-family real estate dispute over the interests in four New York real estate properties.

In substance the amended complaint alleges two RICO claims under 18 U.S.C. §§ 1962(c) and (d), as well as state law claims for fraud, breach of fiduciary duty and breach of contract, and for a constructive trust. According to plaintiffs, they transferred some $1.4 million to defendants to invest in real estate for plaintiffs, but defendants defrauded plaintiffs and denied that they had any interest in the properties purchased. In a January 23, 1987 memorandum and order this court denied defendants' motion to dismiss the RICO claims and the common law fraud claim. The

parties are now involved in discovery proceedings before the magistrate.

The amended answer to the amended complaint alleges as a third affirmative defense the following:

Upon information and belief, beginning at some time prior to November, 1977 plaintiffs became involved in various business ventures in Canada and in the United States. In order to conceal some of the proceeds of those investments (the "Proceeds") from governmental authorities, plaintiffs devised a scheme whereby they transferred the Proceeds to bank accounts in the Netherlands Antilles and in Switzerland.

Upon information and belief, at some point plaintiffs desired to return at least some of the Proceeds to the United States for possible investment without disclosing the existence of the Proceeds to the authorities. Accordingly, they devised a further scheme to continue to conceal the Proceeds from governmental authorities whereby they conspired to and, in fact, transferred the Proceeds to defendant Moishe Bisticer who deposited the Proceeds under his own name in a United States bank account. If, as plaintiffs claim, the Proceeds were to be invested in New York real estate by Moishe Bistricer pursuant to an oral agreement between plaintiff Herman Bistricer and defendant Moishe Bistricer, that agreement too was part and parcel of plaintiffs' fraudulent scheme to keep the Proceeds hidden from governmental authorities. Indeed, if that was the case, plaintiffs evidently planned to have the Proceeds invested by Moishe Bistricer in his own name but on behalf of Herman Bistricer so that there would be no record of the investment which could possibly be discovered by the authorities. Since plaintiffs' transfer of the Proceeds to Moishe Bistricer and plaintiffs' alleged agreement with defendant Moishe Bistricer to have the funds invested in real estate were both integral parts of an illegal scheme which enabled plaintiff Herman Bistricer to conceal the Proceeds from governmental authorities, plaintiffs have unclean hands and should be barred from obtaining equitable relief with respect to their transfer of the Proceeds to defendant Moishe Bistricer, their alleged agreement with Moishe Bistricer and any investments allegedly made pursuant thereto.

Defendants thus say that plaintiffs' scheme was to hide funds from government authorities while reaping a profit from investments made by defendants, and that plaintiffs should thus be barred from equitable relief with respect to the transfer of $1.4 to defendants and the properties in which it was invested. The defense does not allege that any government authority has made, or indeed has, any claim against plaintiffs.

To substantiate the defense defendants have requested correspondence and other records as to plaintiffs' bank accounts maintained outside the United States and Canada from 1975 to 1979, documents relating to their investments or transfers of money outside the United States and Canada from 1975 to 1979, and their tax returns and related work papers for the years 1977 to 1980.

Plaintiffs objected to the request as unduly burdensome and seeking irrelevant information. The parties submitted the matter to the magistrate. In a memorandum and order dated January 4, 1987 the magistrate denied discovery of plaintiffs' tax returns and related work papers, but directed production of bank records and documents relating to their investments outside the United States, "absent a showing of burden which I will consider if made in a later submission," and except as to documents as to which plaintiffs might assert a privilege. Plaintiffs appeal this ruling.

The court may set aside the magistrate's order if it is "clearly erroneous or contrary to law." Federal Rule of Civil Procedure 72(a). Plaintiffs' basic contention is that the discovery ordered is irrelevant to any bona fide issue in the case because the so-called "unclean hands" defense is insufficient and should be stricken.

Ordinarily a motion to strike under Federal Rules of Civil Procedure 12(f) should

be made within 20 days of service of the pleading. But under that rule the court on its own initiative at any time may strike from a pleading an insufficient defense. Discovery on the issue raised by the affirmative defense alleging plaintiffs' purpose to evade taxes promises to be lengthy and complex. To allow such discovery would therefore not be consistent with the need expressed in Rule 1 of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action" unless the facts provable under the defense would defeat one or more of plaintiffs' equitable claims. The court therefore considers whether the defense is clearly insufficient as a matter of law. *Ciminelli v. Cablevision*, 583 F.Supp. 158, 162 (E.D.N.Y.1984).

Both parties have treated the defense as applying to the claims under New York law. The general rule in New York is that the "unclean hands" defense is unavailable unless the plaintiff's immoral or unconscionable conduct both relates directly to the subject matter in litigation and causes the defendant injury. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 75 (2d Cir.1980) (Friendly, J.), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981), and cases cited. *See also Frymer v. Bell*, 99 A.D.2d 91, 472 N.Y.S.2d 622, 625 (1st Dep't 1984); *Agati v. Agati*, 92 A.D.2d 737, 461 N.Y.S.2d 95, 96 (4th Dep't), *aff'd*, 59 N.Y.2d 830, 451 N.E.2d 490, 464 N.Y.S.2d 743 (1983). As the court said in *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 192 (2d Dep't 1980), "[i]f a plaintiff is not guilty of inequitable conduct toward the defendant in the transaction, his hands are as clean as the law requires."

Plaintiffs argue that the defense is insufficient, because plaintiffs' alleged improper conduct does not meet either prerequisite set forth in these cases. That conduct, say plaintiffs, neither had a direct relation to plaintiffs' claims of fraud and breach of contract nor inflicted any injury on defendants. We may assume for the sake of argument that plaintiffs' alleged scheme to hide assets from the government had a sufficiently direct relationship to the matter in litigation. But defendants claim no injury from the transfer of funds to them.

The issue is therefore whether New York case law allows as a matter of policy a windfall to defendants in order to punish plaintiffs and deter others from engaging in like conduct. Where a plaintiff has made a transfer of property with intent to defraud a creditor having a claim of substance the New York decisions have made an exception to the general rule and have applied just such a deterrent though the transferee has not been injured. For example, in *Farino v. Farino*, 88 A.D.2d 902, 450 N.Y.S.2d 593, 594 (2d Dep't 1982), a husband, "as part of an immoral scheme to defraud" his estranged wife and to reduce the award of alimony, transferred shares of stock to his brother on the promise of a retransfer after resolution of the marital litigation. The court held that "as a matter of public policy" and to "discourage and deter such immoral conduct" the brother could defend under the unclean hands doctrine against a suit to require a retransfer. *See also Yula v. Yula*, 115 A.D.2d 475, 495 N.Y.S.2d 709 (2d Dep't 1985) and cases cited. The same rule has been applied where the plaintiff has conveyed property with intent to defraud business creditors. *See* cases cited in *Palumbo v. Palumbo*, 55 Misc.2d 264, 284 N.Y.S.2d 884, 886–87 (Sup. Ct.Nass.Cty.1967).

Whatever may be said of the deterrent efficacy of such holdings in cases involving private parties, there is little reason to apply them to a case where the allegedly improper conduct has the purpose of hiding funds from government authorities. Defendants' brief asserts that plaintiffs' purpose was to cheat the tax collector, although the pleading does not say so. In any event defendants have not cited a single decision that has gone so far as to allow a defendant to retain funds it received gratis on the theory that this will make others pause before secreting their assets to evade their taxes. Such a holding would hardly add significantly to the weapons, both criminal and civil, that the government has to require compliance with the tax laws. Moreover, the determination of tax liability is often a difficult, intricate and time consuming task. It would not be wise policy to permit private parties to

litigate such liability in the absence of the government and in a case otherwise wholly unrelated to tax issues. *Cf. Mitchell Brothers Film Group v. Cinema Adult Theater,* 604 F.2d 852, 864 (5th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980); *Dinerstein v. Dinerstein,* 32 A.D.2d 750, 300 N.Y.S.2d 677, 679 (1st Dep't 1969).

In addition, it is "not every potential claim against a transferor that will bring the unclean hands doctrine into play"; the claim must be "of substance." *Palumbo v. Palumbo, supra,* 284 N.Y.S.2d at 889. The defense at issue does not assert that any government authority has a claim of substance. The defendant has the burden of pleading and showing this, and the court cannot infer from the fact the transfer was made that the claim is of substance. *Id.* at 890. The defendants allege no facts to suggest government authorities have a substantial claim against plaintiffs.

The court on its own initiative strikes the third affirmative defense and reverses the magistrate's order insofar as it directs discovery as to the defense.

Since the papers suggest that plaintiffs may have sought to conceal assets from government authorities, the court sends a copy of this memorandum and order to the United States Attorney for such investigation and action as he deems appropriate.

So ordered.