Toobian v Golzad (2021 NY Slip Op 02186)





Toobian v Golzad


2021 NY Slip Op 02186


Decided on April 7, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2018-10728
 (Index No. 504238/15)

[*1]Payam Toobian, respondent,
v
Mehrdad Golzad, et al., appellants.


Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., New York, NY (Christopher J. Sullivan, Dominic J. Picca, and Alexandra G. Calistri of counsel), for appellants.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, Brooklyn, NY (Justin T. Kelton and Mark Furman of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to impose a constructive trust, the defendants appeal from an interlocutory judgment of the Supreme Court, Kings County (Lawrence Knipel, J.), dated July 30, 2018. The interlocutory judgment imposed a constructive trust in favor of the plaintiff on certain real property and directed an accounting.
ORDERED that the interlocutory judgment is affirmed, with costs.
The facts of this case are set forth in greater detail in our decision in Toobian v Golzad (___ AD3d ___ [Appellate Division Docket No. 2018-02266; decided herewith]). Insofar as relevant here, it is sufficient to note that the plaintiff claims that in 2009, the defendant Mehrdad Golzad (hereinafter the defendant), at the plaintiff's request, financed and purchased real property and formed a limited liability company, the defendant BK 2102, LLC (hereinafter the LLC), for the purpose of holding the property. The plaintiff alleges that he funded the transaction, both via cash contributions and loans from the defendant, and that the defendant agreed to hold the property and the LLC on the plaintiff's behalf until such time as the plaintiff could obtain credit enabling him to hold the property and the LLC in his own name. In 2014, the plaintiff obtained financing and sought conveyance of the property, but the defendant refused on the ground that he was the true owner of the property and the LLC. This action ensued. After a nonjury trial, the Supreme Court found in the plaintiff's favor and imposed a constructive trust on the subject property, but directed a special referee to conduct an accounting to compute the sums due to the defendant and interest thereon in connection with his contributions to the property. The defendants appeal. We affirm.
"In reviewing a determination made after a nonjury trial, this Court's authority is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into consideration that in a close case the trial court had the advantage of seeing and hearing the witnesses" (Reingold v Bowins, 180 AD3d 722, 723; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499).
Contrary to the defendants' contention, the Supreme Court did not err in relying on Joint Exhibit 59 as an admission by the defendant and a means of determining the true nature of the [*2]parties' relationship. "An informal judicial admission is evidence of the fact or facts admitted" (Rosales v Rivera, 176 AD3d 753, 755; see Gangi v Fradus, 227 NY 452, 456; Koester v Rochester Candy Works, 194 NY 92, 93). While the defendant was entitled to proffer an explanation for his admissions in Joint Exhibit 59 (see Wachtel v Equitable Life Assur. Socy., 266 NY 345, 351; Chamberlain v Iba, 181 NY 486, 492), the defendant's assertion that he recorded property-related payments in an attempt to calculate the money he had invested in the subject property failed to explain his characterization of those payments as loans to the plaintiff, particularly since he created the document marked as Joint Exhibit 59 for his own use years prior to this action. Similarly, the defendant's explanation that an entry labeled "Final Balance after real estate transfer" which, by the defendant's calculations, reduced the plaintiff's debt to him by approximately $1.7 million, represented the plaintiff's contemplated purchase of the property was incoherent since there was no explanation of why the plaintiff's purchase of the subject property from the defendant would reduce his debt to the defendant.
Notwithstanding the acknowledged computational errors in Joint Exhibit 59, the Supreme Court properly looked to the defendant's choice to record sums which he paid toward the purchase and maintenance of the subject property as loans to the plaintiff as weighty evidence that those expenditures were, in fact, loans. Similarly, the court correctly determined that the defendant's calculation of "Final Balance after real estate transfer" was explicable only if, as the plaintiff claimed, the equity in the property belonged to the plaintiff.
"'The statute of frauds prohibits the conveyance of real property without a written contract'" (Gendler v Guendler, 174 AD3d 507, 509, quoting Pinkava v Yurkiw, 64 AD3d 690, 692; see General Obligations Law § 5-703[3]). However, "'[n]othing contained in [General Obligations Law § 5-703] abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance'" (Korman v Corbett, 183 AD3d 608, 610, quoting General Obligations Law § 5-703[4]; see Zito v County of Suffolk, 106 AD3d 814, 815). Thus, "the statute of frauds is not a defense to a properly pleaded cause of action to impose a constructive trust on real property" (Ubriaco v Martino, 36 AD3d 793, 794).
A party who relies on the part performance exception must demonstrate that his or her actions are "unequivocally referable" to the oral agreement which he or she seeks to establish (see Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229, 235; Weiss v Halperin, 149 AD3d 1143, 1145; Barretti v Detore, 95 AD3d 803, 806). "'Unequivocally referable' conduct is conduct which is inconsistent with any other explanation" (Barretti v Detore, 95 AD3d at 806 [internal quotation marks omitted]). "It is insufficient that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement" (Gendler v Guendler, 174 AD3d at 509 [internal quotation marks omitted]; see Anostario v Vicinanzo, 59 NY2d 662, 664). "Significantly, the doctrine of part performance 'is based on principles of equity, in particular, recognition of the fact that the purpose of the Statute of Frauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield'" (Pinkava v Yurkiw, 64 AD3d at 692, quoting Nicolaides v Nicolaides, 173 AD2d 448, 450).
Joint Exhibit 59 indicates that the plaintiff owed the defendant property-related debts in excess of one million dollars. Again, even assuming some computational errors, the defendant proffered no explanation why the plaintiff would contribute such a substantial sum (albeit in the form of a debt to the defendant) to a property in which he had no financial interest. Accordingly, the evidence supported the Supreme Court's finding that the plaintiff's contribution of those funds was "unintelligible or at least extraordinary" without reference to the oral agreement (Gendler v Guendler, 174 AD3d at 509 [internal quotation marks omitted]; see Hernandez v Florian, 173 AD3d 1144, 1145).
"The doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct" (Citimortgage, Inc. v Heyman, 186 AD3d 1487, 1488-1489 [*3][internal quotation marks omitted]; see Ortiz v Silver Invs., 165 AD3d 1156, 1157). Furthermore, "[r]elief is denied under the 'clean hands' doctrine, 'not as a protection to a defendant, but as a disability to the plaintiff' and as a matter of public policy in order to protect the integrity of the court" (Farino v Farino, 88 AD2d 902, 903, quoting Reiner v North Am. Newspaper Alliance, 259 NY 250, 256).
Here, the evidence strongly suggests that the plaintiff sought the defendant's participation in the purchase of the subject property at least in part to avoid, shield and/or divert assets from his creditors and to use the defendant's name and credit to obtain credit for which he otherwise would not have qualified. However, the defendants have pointed to no way in which the plaintiff's apparent efforts to avoid his creditors damaged himself. While the record indicates that the plaintiff borrowed millions of dollars from the defendant, the plaintiff has not denied doing so or attempted to excuse repayment of that debt except to the extent that he claims he has repaid portions of it. Furthermore, since the interlocutory judgment referred the matter to a special referee to prepare an accounting and provided for an award, with interest, to the defendant to the extent that monies were due him, the Supreme Court properly safeguarded the defendant's interest in the plaintiff's legitimate debts to him. Accordingly, to the extent that the plaintiff had unclean hands, that did not preclude the court's imposition of a constructive trust upon the subject property.
While decisional authorities over the years contain some inconsistency on the issue of who must be damaged for there to be an invocation of the unclean hands doctrine, the overwhelming number of cases require that the damage be incurred by a party in the case seeking to invoke the defense (see National Distillers & Chem. Corp. v Seyopp Corp., 17 NY2d 12, 15-16; Weiss v Mayflower Doughnut Corp., 1 NY2d 310, 316; Ortiz v Silver Invs., 165 AD3d at 1157; Lucia v Goldman, 145 AD3d 767, 769; Abdel-Qader v Abdel-Qader, 79 AD3d 674; Jara v Strong Steel Door, Inc., 58 AD3d 600, 602; Columbo v Columbo, 50 AD3d 617, 619; Fade v Pugliani/Fade, 8 AD3d 612, 614; Kopsidas v Krokos, 294 AD2d 406, 407; Moo Wei Wong v Wong, 293 AD2d 387; Welch v Di Blasi, 289 AD2d 964; Zimberg v Zimberg, 268 AD2d 232; Langdon v Langdon, 138 AD2d 358; Higgins v Normile, 130 AD2d 828, 829; Frymer v Bell, 99 AD2d 91, 96; Agati v Agati, 92 AD2d 737, affd 59 NY2d 830; but see Walker v Walker, 289 AD2d 225; Jossel v Meyers, 212 AD2d 55, 57-58). Many of the cited cases involve actions where the damaged party is the same as that invoking the unclean hands defense, as distinguished from nonparties. The defendants' reliance upon Festinger v Edrich (32 AD3d 412) is misplaced, as the holding there is based more on the doctrine of judicial estoppel than on the doctrine of unclean hands. Ultimately, we are bound by the language and precedent of Weiss v Mayflower Doughnut Corp. (1 NY2d at 316). In Weiss, the Court of Appeals held that a "party" must incur damage in order to invoke the doctrine of unclean hands against the plaintiff and, therefore, damage incurred by a nonparty is insufficient to invoke the doctrine (id.).
In determining matters of equity such as unclean hands, trial justices have discretion to do what is fair, proper, and just (see Sui-Hsu Hsieh v Yen-Tung Teng, 156 AD3d 1424, 1425). Here, we defer to the Supreme Court's findings of fact and conclusions of law explaining its decision to not invoke the doctrine of unclean hands against the plaintiff. The defendant was a willing participant in the plaintiff's scheme to hide assets, and as noted by the court, was not damaged by it. The court had a full opportunity to observe the parties and their evidence in a nonjury context, consider the issues presented to it, assess witness credibilities, and exercise its equitable discretion as it saw best.
"'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee'" (Ubriaco v Martino, 36 AD3d at 794, quoting Beatty v Guggenheim Exploration Co., 225 NY 380, 386). The four factors to be considered in ascertaining whether the imposition of a constructive trust is warranted are the existence of a fiduciary or confidential relationship, a promise, a transfer in reliance thereon, and unjust enrichment (see Delidimitropoulos v Karantinidis, 186 AD3d 1489, 1490-1491; Ubriaco v Martino, 36 AD3d at 794). However, since it is an equitable remedy, a constructive trust is "necessarily flexible to accomplish its purpose" (Counihan v Allstate Ins. Co., [*4]194 F3d 357, 361 [2d Cir]). Accordingly, these factors are guidelines, not inflexible elements (see Delidimitropoulos v Karantinidis, 186 AD3d at 1490; Galasso, Langione & Botter, LLP v Galasso, 176 AD3d 1176, 1184; Hernandez v Florian, 173 AD3d at 1145).
"A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. Put differently, [a] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other" (Roni LLC v Arfa, 18 NY3d 846, 848 [internal quotation marks omitted]; see Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d 584, 592-593). "A fiduciary relationship is 'necessarily fact-specific' and is also 'grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions'" (Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d at 593, quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19; Roni LLC v Arfa, 74 AD3d 442, 444, affd 18 NY3d 846).
Here, the evidence established that the parties enjoyed a relationship founded on trust and companionship in addition to an extensive, if informal, business relationship. The degree to which the plaintiff felt free to seek loans of hundreds of thousands of dollars from the defendant, and the informality with which those loans were made, suggests a relationship in which the parties relied upon one another's good faith. For instance, while the parties disagree about why, they agree that the defendant frequently allowed the plaintiff to use his American Express card to make charges in the tens of thousands of dollars. Correspondingly, the plaintiff often repaid the loans or American Express charges by making payments directly to the defendant's creditors. The plaintiff's willingness to place all legal control of the subject property and the LLC in the defendant similarly indicates a fiduciary relationship, as does the defendant's willingness to hold the property on the plaintiff's behalf, and loan him millions of dollars for its purchase, including taking on a $2.8 million mortgage backed by the defendant's personal guaranty. This evidence amply supported the Supreme Court's determination that the parties had a confidential or fiduciary relationship warranting the imposition of a constructive trust in the plaintiff's favor (see Mei Yun Chen v Mei Wan Kao, 97 AD3d 730).
Accordingly, we affirm the interlocutory judgment.
DILLON, J.P., CHAMBERS, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court